

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AES
F. #2013R00799

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 7, 2018

By Hand and ECF
The Honorable Margo K. Brodie
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

   Re: United States v. Milton Contreras
      Criminal Docket No. 14-463 (MKB)

Dear Judge Brodie:

  On August 4, 2016, the defendant Milton Contreras (the "defendant" or "Contreras") pleaded guilty before United States Magistrate Judge Ramon E. Reyes to Count Five of a five-count, second superseding indictment.  Count Five charged the defendant, along with his co-defendants Byron Lopez, Oscar Welman Espinoza-Merino and Jose Osmin Rubio, in the course of a violation of 18 U.S.C. § 924(c) (specifically, the crime charged in Count Four, which was possessing, brandishing and discharging a firearm during a crime of violence), with knowingly and intentionally causing the death of a person through the use of a firearm, which killing was a murder as defined in 18 U.S.C. § 1111(a), in that the defendant and his co-conspirators, with malice aforethought, did unlawfully kill Sidney Valverde.  The defendant filed a sentencing memorandum on February 5, 2018 (see Dkt. No. 140 ("Def. Memo.")), and is scheduled to be sentenced on February 15, 2018.  For the reasons stated below the government respectfully requests that the Court impose a sentence of incarceration within the applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 292 to 365 months' imprisonment.

I.   Factual Background

   A.   Offense Conduct

Contreras is, along with his co-defendants, a member of the violent gang La Mara Salvatrucha or "MS-13."  PSR ¶ 2.[1]  MS-13 is comprised of individuals from, or who have relatives from, Central America, and has members throughout the United States and abroad who are divided into local chapters or "cliques."  Id.  Each clique holds meetings to plan criminal activity and collect dues for the clique's treasury; those funds are either used to purchase firearms and ammunition for criminal activity or sent back to MS-13 gang members in Central America.  Id.

Contreras, who goes by the names "Diabolico" and "Flaco" within the gang, was a member of the MS-13 clique known as "BLS" located in Brentwood, New York, on Long Island.  PSR ¶ 3.  Co-defendants Espinoza-Merino and Rubio were also members of BLS.  Id.  Co-defendant Lopez was the leader of a separate MS-13 clique based in Jamaica, Queens, known as "JLS"; the victim Valverde, who was known as "Zombie," was also a member of JLS.  Id.

In early 2014, Contreras and his co-defendants, along with other members of MS-13, became convinced that Valverde—who was just 19 years old at the time—was cooperating with law enforcement.  PSR ¶ 4.  As a result, Lopez determined to have Valverde killed by luring him from Queens to Long Island on the pretext of accompanying Lopez and Espinoza-Merino on MS-13 business with members of the BLS clique, including Contreras and Rubio.  Id.  On February 24, 2014, the night before the murder, Lopez was asked via Facebook message "What ya up too"; Lopez responded "matando zombie," which translates as "killing zombie."  Id.

On February 25, 2014, Lopez convinced Valverde to accompany him, Espinoza-Merino and Rubio from Jamaica, Queens to North Bay Shore, Long Island, by telling Valverde that they were going to assist the BLS clique with an assault on a rival gang.  PSR ¶ 5.  The group went to a house in North Bay Shore where several individuals were located, including Contreras and a woman named Milagro Canjura.  Id.  Lopez remained behind at the house with Canjura, and sent Espinoza-Merino, Contreras, Rubio and Valverde, along with a firearm from MS-13's stash of weapons, by car to purportedly find the rival gang; in reality, the men intended to find a secluded location and kill Valverde.  PSR ¶ 6.

Espinoza-Merino, Contreras, Rubio and Valverde drove to Miller Place Beach in Suffolk County, Long Island, where they parked the car and walked down to the beach.  PSR ¶ 6.  The three defendants allowed Valverde to walk ahead, and then Contreras shot Valverde once in the back of the head.  Id.  Valverde's body was left on the beach, where it was found by a passerby approximately two weeks later.  Id.

---

[1] The references to the PSR are to paragraph numbers in the revised PSR dated March 21, 2017.

2

After the murder, Espinoza-Merino, Contreras and Rubio returned to the car and drove to the house in North Bay Shore, where Lopez and Canjura were waiting; picked up Lopez; and returned to Jamaica, Queens.  PSR ¶ 7.  Approximately 6 months later, on August 28, 2014, Lopez was arrested in Jamaica, Queens, and charged with Valverde's murder.  Id. at ¶ 8.  Two days later, on August 30, 2014, Canjura was shot and killed outside the house in North Bay Shore where the defendants had convened on February 25, 2014.  Id.  Contreras was ultimately located and arrested in Kansas City, Kansas, where he fled to following Lopez's arrest.  Id. at ¶ 34.  Espinoza-Merino and Rubio also subsequently arrested for Valverde's murder.  Id. at ¶ 8.

      B.     <u>Contreras's Criminal History and Immigration Status</u>

Contreras was previously arrested in Suffolk County on May 16, 2013, after he was caught on video harassing a female classmate at school and then grabbing a gold necklace from her neck, and subsequently pled guilty to petit larceny.  PSR ¶¶ 26, 44.  Contreras was unable to appear for sentencing because he was incarcerated in connection with this case.  Id.  Based on the conviction, Contreras has a total criminal history score of one.  Id. at ¶ 27.

In addition, Contreras has been sanctioned for disciplinary incidents on four separate occasions while incarcerated at the Metropolitan Detention Center ("MDC").[2]  In June 2016, Contreras was sanctioned for phone abuse-disrupt monitoring (PSR at ¶ 39); in November 2016, he was sanctioned for being in an unauthorized area; in September 2017, he was sanctioned for the use of drugs/alcohol; and in January 2018, he was sanctioned for being in an unauthorized area and refusing to obey an order.

Contreras immigrated to the United States illegally as a minor, and remained in the United States without legal status.  PSR ¶ 34.  Subsequent to serving the sentence imposed for this crime, Contreras will be subject to deportation.  Id.

II.    <u>Sentencing Guidelines and Restitution</u>

      A.     <u>Guidelines Calculation and Mandatory Minimum</u>

The government respectfully submits that the appropriate United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") calculation is set forth in the PSR and below (PSR ¶¶ 14-24):

---

[2] The revised PSR is dated March 21, 2017, and lists only one disciplinary incident (the incident from June 2016).  The government recently inquired with the BOP as to whether Contreras had additional disciplinary incidents since the revised PSR was prepared, and received updated information about the additional three incidents on February 7, 2018, which the government has provided to Probation.

3

| | |
|---|---:|
| Base Offense Level (U.S.S.G. § 2A1.1) | 43 |
| Less:  Acceptance of Responsibility (§§ 3E1.1(a) and (b)) | <u>-3</u> |
| Total Offense Level: | <u>**40**</u> |

Contreras has a criminal history score of one, and thus a criminal history category of I.  PSR ¶ 27.  Based on a total offense level of 40 and a criminal history category of I, the defendant's Guidelines range of imprisonment is 292 months to 365 months.  See id. ¶ 54.

In addition, pursuant to 18 U.S.C. 924(j)(1), the mandatory minimum term of imprisonment is 10 years (or 120 months' imprisonment), as the crime of conviction in Count Five is predicated on the crime charged in Count Four, which charges a violation of 18 U.S.C. § 924(c)(1)(A)(iii).  See United States v. Young, 561 Fed. Appx. 85, 93-94 (2d Cir. 2014); see also Contreras's plea agreement at paragraph 1(b).

  B. <u>Restitution</u>

Restitution is mandatory pursuant to 18 U.S.C. § 3663A.  As detailed in the PSR addendum, Valverde's family has submitted an affidavit of loss detailing funeral and burial expenses (including the cost of the funeral home, cemetery and flowers) totaling $6873.40.  See Addendum to the PSR.  Consequently, restitution should be ordered in this amount.

III. <u>Analysis</u>

It is settled law that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented."  Id. at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

4

        (A)       to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)       to afford adequate deterrence to criminal conduct; [and]

        (C)       to protect the public from further crimes of the defendant.

Section 3553 also addresses the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). "[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

It is well-settled that, at sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

IV.      The Appropriate Sentence

The government respectfully recommends a sentence within the applicable Guidelines range of 292 to 365 months' imprisonment. As detailed above, the murder of Valverde—who was just 19 years old at the time of his death—was carefully plotted and executed by Contreras and his co-defendants after it was suspected that Valverde might be cooperating with law enforcement. Contreras and the others formulated and then carried out an elaborate ruse to lure Valverde to a remote location, so that while Valverde believed he was accompanying his friends and fellow MS-13 members on an assignment, he would not suspect that they planned to kill him in cold blood. The premeditated, calculating nature of the murder as well as the casualness with which Contreras and his co-defendants treated the crime—for example, Lopez's comments about killing Valverde the day prior to the murder and the manner in which Contreras and the others simply abandoned Valverde's body on the beach to be found weeks later—weigh heavily in favor of a substantial sentence that reflects the seriousness of the crime and the need for punishment.

In addition, a sentence within the applicable Guidelines range would provide a significant deterrent effect, both to the defendant and others who would commit similar crimes. With regard to specific deterrence, the defendant has demonstrated a clear lack of respect for the law: in addition to Valverde's murder, Contreras was an active member of MS-13, pled guilty to theft of a classmate's necklace after harassing her, and has committed

5

a series of increasingly serious disciplinary infractions while incarcerated at the MDC, including the use of drugs/alcohol. Moreover, a significant sentence will provide general deterrence by sending a clear message to the many other members or prospective members of MS-13 in the EDNY community—as there are active cliques throughout New York City and on Long Island—that such violence will not go unpunished.

Finally, counsel for Contreras agrees that a Guidelines sentence is appropriate given the sentencing goals set forth in Section 3553(a). Def. Memo. at 3-4.

V.   Conclusion

For the reasons articulated above, the government respectfully requests that the Court impose a sentence within the applicable Guidelines range, which is sufficient, but not greater than necessary, to achieve the goals of sentencing. 18 U.S.C. § 3553(a).

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/ Alixandra E. Smith
Alixandra E. Smith
Assistant U.S. Attorney
(718) 254-6370

cc:   Elizabeth E. Macedonio, Esq. (by ECF and email)
United States Probation Officer Michelle Murphy (by e-mail)